IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**JESUS R. MARTINEZ,**

      **Plaintiff,**

**vs.**                                         **No. 02cv1494 DJS**

**JO ANNE B. BARNHART,**
**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## MEMORANDUM OPINION

This matter is before the Court on Plaintiff's (Martinez') Motion to Reverse and Remand for a Rehearing **[Doc. No. 10]**, filed April 21, 2003, and fully briefed on June 24, 2003. The Commissioner of Social Security issued a final decision finding Martinez had experienced medical improvement related to the ability to perform work , affirming the prior determination that Martinez was no longer disabled effective August 1, 1997, and affirming the prior determination that Martinez' disability insurance benefits be terminated effective October 31, 1997. Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds the motion to reverse and remand for a rehearing is not well taken and will be DENIED.

### I. Factual and Procedural Background

Martinez, now forty-six years old, filed his application for disability insurance benefits on August 18, 1989, alleging disability since April 14, 1987, due to hip injuries resulting in a hip replacement and back injuries. In 1993, Martinez was awarded disability insurance benefits from

April 14, 1987 through October 31, 1997. In June 1997, the agency initiated a continuing disability review, concluding that Martinez' health had improved and he could return to work.[1] On August 1997, the agency notified Martinez that his benefits were being terminated. In response, Martinez alleged that he remained disabled due to hip pain, headaches, and a right shoulder condition. On September 26, 2000, the Administrative Law Judge (ALJ) issued his decision, finding Martinez had undergone medical improvement related to the ability to do work beginning August 1, 1997. Tr. 22. The ALJ also found Martinez was not totally credible regarding his alleged limitations. *Id.* Martinez filed a Request for Review of the decision by the Appeals Council. On October 9, 2002, the Appeals Council denied Martinez' request for review of the ALJ's decision. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Martinez seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). "Evidence is not substantial if it is overwhelmed by other evidence in the record

---

[1] After a claimant has been awarded disability benefits, the Commissioner is required to review the case periodically to determine whether there has been any medical improvement in the claimant's condition and whether that improvement affects the claimant's ability to work. 20 C.F.R. § 404.1594(a).

or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989). "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III. Discussion

An eight-part sequential evaluation process is used in termination reviews. See 20 C.F.R. § 404.1594(f)(1) through (8). This evaluation includes the following:

1. Is beneficiary performing any work constituting substantial gainful activity?

2. Does current impairment meet or equal listed impairment?

3. Has there been medical improvement? [2]

---

[2] Medical improvement under the regulations is defined as:

Any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s).

4. If so, is it related to the claimant's ability to do work, i.e., has there been an increase in the residual functional capacity (RFC) based on the impairment(s) present at the time of the most recent favorable medical determination?

5. If there has been no medical improvement, or if such improvement is not related to claimant's ability to work, do any of the exceptions to medical improvement apply? (see 20 C.F.R. 404.1594(d)-(e) for list of exceptions.)

6. If the medical improvement is related to ability to do work, or if one of the exceptions found in 404.1594(d) apply, then are all the current impairments in combination severe?

7. Considering all current impairments, does beneficiary have sufficient RFC to do past relevant work?

8. In addition, considering age, education, and other past work experience, does beneficiary have sufficient RFC to perform other work?

20 C.F.R. § 404.1594(f)(1) through (8). The Commissioner bears the burden of showing medical improvement by establishing that the claimant's medical condition has improved, the improvement is related to the claimant's ability to work, and the claimant is currently able to engage in substantial gainful activity. *Glenn v. Shalala*, 21 F.3d 98, 987 (10th Cir. 1994). In deciding whether to terminate benefits, a claimant's impairments are considered together. *See* 20 C.F.R. § 404.1594(d).

Martinez was originally found to be disabled due to his hip and back injuries. The ALJ reviewed the medical evidence and concluded the evidence demonstrated that Martinez' hip and back conditions had significantly improved. Tr. 18-20. The ALJ then found Martinez'

---

20 C.F.R. § 1594(b)(1).

impairments had medically improved. The ALJ assessed Martinez' current residual functional capacity (RFC) and determined Martinez' disability ceased as of August 1, 1997, as he could perform light unskilled jobs existing in significant numbers in the national economy as an office helper, a parking lot attendant, and a shipping and receiving weigher. Tr. 22.

In support of his motion to reverse and remand for a rehearing, Martinez advances the following arguments: (1) the ALJ improperly weighed Dr. Harvie's opinion; (2) the vocational expert's findings contain error; and (3) the ALJ failed to consider recent medical impairments.

## A.  Dr. Havie's Evaluation

Martinez contends the ALJ "accorded less than significant weight" to the opinion of Keith W. Harvie. Pl.'s Mem. in Supp. of Mot. to Reverse and Remand at 4. Martinez' counsel referred him to Dr. Harvie for an Independent Medical Evaluation. Dr. Harvie evaluated Martinez on November 10, 1997. Tr. 305-311. Martinez claims the ALJ accorded less weight to Dr. Harvie's opinion because he evaluated Martinez at the request of his counsel and because Dr. Harvie relied on Martinez' subjective complaints.

In his decision, the ALJ noted Dr. Harvie's evaluation and discussed Dr. Harvie's findings and conclusions. Tr. 19. The ALJ also explained the basis for discounting Dr. Harvie's opinion, stating:

> Although I note Dr. Harvie found that the claimant can stand and/or walk for only one hour in an eight-hour workday, I give greater weight to the conclusion of Dr. Toner that the claimant can stand and/or walk for two hours in an eight-hour workday. In weighing these opinions under the criteria set forth in 20 C.F.R. 404.1527(d), I note that neither Dr. Harvie nor Dr. Toner is a treating physician. However, Dr. Toner's conclusion is better supported by objective medical evidence and more consistent with the record as a whole, including Dr. Reeve's report finding the claimant to be able to stand and/or walk for a full eight-hour day and to be able to do so for two hours without interruption. Dr. Harvie relies more heavily on the claimant's subjective complaints. I also take into account under

> "other factors" that Mr. Martinez' attorney referred him to Dr. Harvie. Therefore, I give greater weight to the conclusions of Dr. Toner.

Tr. 20 (citations to the record omitted). The ALJ acknowledged that neither Dr. Harvie nor Dr. Toner were considered treating physicians and thus their opinions were not entitled to controlling weight. However, even opinions of treating physicians are given controlling weight <u>only</u> "when they are well-supported by medically acceptable clinical and laboratory techniques and are not inconsistent with the other substantial evidence in the record." *Castellano v. Sec'y of Health & Human Servs.,* 26 F.3d 1027, 1029 (10th Cir.1994). The ALJ gave specific legitimate reasons for giving more weight to Dr. Toner's conclusion. The ALJ found Dr. Toner's conclusion was better supported by objective medical evidence and was more consistent with the record as a whole. Moreover, the ALJ may resolve conflicting medical opinions. *Eggleston v. Bowen*, 851 F.2d 1244, 1246-47 (10th Cir. 1988). The Court finds no error in the weight the ALJ accorded to Dr. Harvie's opinion.

Martinez also claims the ALJ based his RFC assessment on the fact that the ALJ found he was not fully credible regarding his complaints of disabling pain. Pl.'s Mem. in Supp. of Mot. to Reverse and Remand at 5. However, the ALJ's decision makes clear that he relied on the medical evidence and other factors. The ALJ indicated in his decision that he relied on Dr. Toner's findings. Dr. Toner completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) on May 16, 2000. Tr. 335-337. In that report, Dr. Toner opined Martinez could lift and/or carry 20 to 30 pounds occasionally, frequently lift and/or carry 20 pounds, stand and/or walk at least 2 hours in an 8-hour workday, sit (with normal breaks) about 6 hours in an 8-hour workday, and pushing and pulling were not affected by Martinez' impairments. *Id.* Dr. Toner also opined Martinez should never climb, crouch, or crawl, but could occasionally kneel.

Tr. 336. Dr. Toner also found Martinez was limited in reaching all directions (including overhead) because of his decreased range of motion of his right shoulder. Tr. 337. Dr. Toner found no visual/communicative or environmental limitations. *Id.*

The ALJ also cited to Dr. Anthony P. Reeve's June 25, 1997 disability determination evaluation. Tr. 279-286. Dr. Reeve is the medical director of Industrial Rehabilitation Clinics, specializing in the prevention, management, and rehabilitation of occupational and sports injuries. Tr. 279. Dr. Reeve performed an extensive physical examination and found Martinez to be "a very healthy able bodied individual." Tr. 281. At that time, Martinez did not complain of any shoulder problems, therefore, Dr. Reeve found he could perform all activities that would involve upper extremity mobilization. Nevertheless, the ALJ adopted Dr. Toner's limitation as to overhead reaching. Dr. Reeve also noted that Martinez reported he was independent in all his activities of daily living and was driving and grooming independently. Tr. 279. Dr. Reeve also questioned Martinez' claim that he could "ambulate only approximately 40 feet" because Martinez "was able to ambulate without any difficulties from Dr. Reeve's office to his car which was greater than 40 feet." *Id.* Dr. Reeve opined Martinez "should be able to perform most activities in a light to sedentary duty position." Tr. 281.

Dr. Reeve also completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) on the same day. Tr. 283-286. As previously noted, Martinez was not complaining of any shoulder problems at that time, therefore, Dr. Reeve found no limitations in lifting and/or carrying. Tr. 283. Dr. Reeve also opined Martinez could stand and/or walk 8 hours in an 8-hour workday and stand and/or walk two hours without interruption. *Id.* Dr. Reeve found no limitations in Martinez' ability to sit, reach, feel, speak, handle, hear, or travel. Tr. 284.

Dr. Reeve also performed a Range of Motion form which was essentially unremarkable except for right knee flexion-extension (was able to flex-extend 100 degrees instead of 120 degrees), right hip forward flexion (was able to forward flex 70 degrees instead of 100 degrees ) right hip backward extension (was able to backward extend 10 degrees instead of 30 degrees), right hip abduction (was able to abduct 20 degrees instead of 40 degrees), right hip adduction (was able to adduct 10 degrees instead of 20 degrees), cervical flexion (was able to flex 20 degrees instead of 30 degrees), cervical extension (was able to extend10 degrees instead of 30 degrees), and cervical rotation (was able to rotate 40 degrees to the right and 30 degrees to the left instead of 45 degrees).  Tr. 285-286.  Martinez could squat, walk on his toes and walk on his heels.  Tr. 286.

The ALJ also noted that Martinez had not had any treating physician since 1991.  Tr. 19. In fact, Martinez had only seen physicians to get evaluations for his disability claim.  *Id.*  The ALJ relied on Martinez' "Claimant's Medications" form which reflected Martinez took no prescription medications and took only Tylenol for his headaches.  *Id.*  The ALJ also considered Martinez' daily activities.  Tr. 20.  Contrary to Martinez' claim that the ALJ relied solely on finding Martinez' complaints of pain not credible to support his RFC determination, the ALJ considered all of the evidence in determining Martinez' RFC and applied the correct legal standard.

### B.  **Failure to Consider Recent Medical Impairments**

Martinez contends the ALJ failed to consider his shoulder impairment.  According to Martinez, the ALJ indicated at the administrative hearing" that he would not consider conditions that [had] arisen since the cessation, such as [his] shoulder impairment.  Mem. in Supp. of Mot. to Reverse and Remand at 7.  Therefore, Martinez claims the case must be remanded for proper

8

consideration of all his impairments. Martinez' argument is without merit. Although the ALJ questioned during the administrative hearing whether he could consider conditions that had arisen since the cessation of benefits (Tr. 62, 63), he obviously resolved the question and considered Martinez' shoulder impairment in his decision.

In his decision, the ALJ noted:

I find that the claimant currently has severe impairments consisting of status post right hip replacement, chronic right hip pain, <u>decreased range of motion in the right shoulder</u>, and headaches.

\* \* \* \* \* \* \* \* \* \*

I find that the claimant retains a residual functional capacity to perform a limited range of light work as follows: the ability to lift 20 pounds occasionally and 10 pounds frequently, the ability to sit for six hours in an eight-hour workday, and the ability to stand and/or walk for two hours in an eight-hour workday. He also requires a sit/stand option. He can never climb stairs, balance, crawl or crouch and can only occasionally kneel. <u>He has a limited range of motion with the right arm and thus cannot do overhead work or over-the-shoulder work</u>.

I note at the outset that the claimant has not had any treating physician since 1991. He has seen only doctors to get evaluations for his disability claim. His Claimant's Medication form shows that he takes no prescription medications and that he takes only Tylenol for headaches. He testified that he has not seen a doctor since his examination for Social Security and sees no doctor for his low back [pain], headaches, neck, and <u>shoulder</u>.

\* \* \* \* \* \* \* \* \* \*

The consultative examination report dated May 16, 2000 by Dr. Eugene Toner revealed that the claimant had an antalgic gait, favoring his right leg. He had full cervical, thoracic, and lumber range of motion, with a negative straight leg-raising test. The shoulders will be elevated to 80 degrees, abducted to 90 degrees, adducted to zero degrees on the right with full flexion and extension and internal and external rotation bilaterally. <u>The left shoulder also had full elevation and abduction</u>. Adduction was 10 degrees. The elbows and wrists had full range of motion and his hands had good grip, pinch, and oppositional strength.

His hips showed a surgical scar over the greater trochanter of the right hip  Flexion on the right was 85 degrees, extension was 5 degrees, and abduction was 25 degrees. There was normal adduction and internal and external rotation. The left hip had full range of motion. Knees and ankles also had full range of motion. There was no evidence of any sensory loss to the <u>upper</u> or lower extremities. The claimant gave only 3/5 strength to his <u>right shoulder girdle</u> and right hamstrings and quadriceps with normal strength to his left upper and lower extremities. Deep tendon reflexes were 1+ and equal. There was no evidence of any deformities. <u>The two views of the right shoulder were within limits.</u>

Tr. 18-20 (citation to record omitted and emphasis added).  Additionally, at the administrative hearing, the ALJ posed the following hypothetical to the vocational expert (VE).

> I want to ask you to assume that he's 43 years old, has a seventh or eighth grade education in Mexico, that he can speak English, that he can read some English and he has a very difficult time writing English.  He has a past relevant work history reflected by the documents in the file and his testimony today.  I want you to assume that he can lift 30 pounds on occasion, 20 pounds frequently, can stand and walk up to two hours in an eight-hour shift, can sit up to eight hours - -six hours in an eight-hour shift but needs a sit/stand option at his convenience.  He should never have a job where as part of the job he is required to climb stairs, [inaudible], crouch or crawl.  He can occasionally kneel.  <u>He has some limited reaching with the right arm and should have no job that requires over the shoulder or overhead work</u>.  Based upon that hypothetical, is there work available in the regional and national economy substantial enough that such a person could do in your opinion?

Tr. 58-59 (emphasis added).  It is evident from the ALJ's decision and his hypothetical to the VE that he considered and evaluated all of Martinez' current impairments in finding Martinez could perform a limited range of light work.

## C.  **Vocational Expert Testimony**

According to Martinez, the VE erroneously found he could perform the jobs of office helper and shipping and receiving weigher.  In support of this contention, Martinez claims the job of officer helper and shipping and receiving weigher require a language rating level of 2.  A language rating level of 2 requires the ability to write compound and complex sentences, using proper end punctuation, and employing adjectives and adverbs.  Pl.'s Mem. in Supp. of Mot. to Remand and Reverse, Ex. B (Dictionary of Occupational Titles ¶ 239.567-010 at 2).

Prior to posing the hypothetical question to the VE, the ALJ questioned the VE regarding Martinez' past relevant work.  The following dialogue transpired between the ALJ and the VE.

> ALJ: Let me ask you to assume that the – well, have you reviewed the claimant's vocational documents in the file and listened to his testimony today about his past relevant work?
>
> VE: Yes, your Honor.
>
> ALJ: Are you able to give me a vocational profile on his past relevant work?
>
> VE: Yes, your Honor.
>
> ALJ: Would you?
>
> VE: Yes. Mainly he was a cook, a specialty cook, DOT 313.361-030. The job is classified as medium work, however, the way it's normally performed in the labor market and the way he performed it was medium to heavy. It's a skilled job with an SVP of seven and he met that skill level.
>
> ALJ: Would he have acquired any transferable skills?
>
> VE: Yes, your Honor. Basically, the technical skills are specialty skills using cooking, measurement skills, and he used a variety of cooking tools, machines and equipment.

Tr. 57-58. The Commissioner points out, that although Martinez may not be able to perform all of the jobs of office helper or shipping and receiving weigher based on his writing ability, Martinez' past work as a specialty cook required the same writing ability as the jobs the VE identified as available to someone sharing Martinez' vocational profile. Def.'s Resp., Ex. B (Dictionary of Occupational Titles ¶ 313.361-030 at 2).

Additionally, the Commissioner contends Martinez can perform the job of parking lot attendant which only requires the ability to "print simple sentences containing subject, verb, and

11

object, and series of numbers, names, and addresses." Pl.'s Mem. in Supp. of Mot. to Reverse and Remand, Ex. C (Dictionary of Occupational Titles ¶ 915.473-010 at 2). The VE testified there were 63,000 parking lot attendant jobs in the national economy and 350 in New Mexico. Therefore, the Commissioner contends she has met her burden at step five of the sequential evaluation process. *See Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995)(Commissioner must identify, and establish the claimant's ability to perform, some specific occupation(s) which– however few in themselves– encompass a significant number of available jobs); *see also,* 20 C.F.R. § 404.1566(b)("Work exists in the national economy [for step-five purposes] when there is a *significant number of jobs* (in *one* or more occupations) having requirements which [the claimant is] able to meet . . . ."(emphasis added)).

However, Martinez argues he cannot perform the job of parking lot attendant because it requires frequent reaching. In response, the Commissioner contends the ALJ found Martinez could perform some limited reaching with his right arm but did not specify any such limitation as to his left arm and the record does not support such restriction. The medical evidence supports the Commissioner's contention. Dr. Toner was very specific as to what restriction he imposed. Dr. Toner noted in his evaluation:

> Of additional concern here is the *decreased range of motion of his right shoulder*. Although I have *no objective findings* for this there is some atrophy to his right biceps, which is his dominant extremity, and it does appear that he does not use this as much as he probably should be able to. As a result, I would recommend that he not do any overhead work. I feel that repetitive motion of his *right arm* would be difficult for him.

Tr. 331 (emphasis added). Additionally, Dr. Toner performed a physical examination and completed a range of motion form. Tr. 330, 331, 334. Neither indicate a problem with Martinez' left shoulder that would preclude him from reaching. Moreover, Dr. Toner completed a Medical

Source Statement of Ability to do Work-Related Activities (Physical) and specifically listed a decreased range of motion of the <u>right shoulder</u> as the basis for finding Martinez was limited in his ability to reach.  Tr 337.

  Significantly, Martinez testified at the August 29, 2000 administrative hearing that he "hurt this shoulder, my right shoulder" but had not been to any doctor for his shoulder injury.  Tr. 44, 45.  He claimed the shoulder "pops every time I lift it and it hurts."  Tr. 46.  He also testified that he hurt his shoulder in a car accident that occurred "about four– five year" before the hearing.  Tr. 45.  The motor vehicle accident occurred on August 31, 1990.  Tr. 165.  At the time of the accident, Martinez went to the emergency room.  The only other medical records mentioning the right shoulder problem are from John Simons, a chiropractor.  Tr. 159-166.  Dr. Simons examined Martinez on September 4, 1990.  *Id.*  However, he did not mention shoulder pain at that time.  On September 5, 1990, Martinez complained of right shoulder pain.  Tr. 164.  On September 7, 1990, Dr. Simons noted the problem with the right shoulder had cleared.  *Id.*  On September 14, Martinez reported he had been "working on floor molding in his house" and complained of a right arm and shoulder problems.  Tr. 163.  By September 28, Martinez reported his "shoulder hurts a little."  *Id.*  There is no mention of any problems with the right shoulder until October 19, 1990.  Tr. 162.  Martinez had resumed weight lifting and had "aggravated his right anterior shoulder."  *Id*.  Dr. Simons directed Martinez to quit weight lifting.  Martinez continued to see Dr. Simons through December 18, 1990, nine visits in September, eight visits in October, seven visits in November, and five visits in December.  Tr. 159-166.  He never complained of right shoulder pain after October 19, 1990.

He also did not mention the problem with his right shoulder to Dr. Reeve. Dr. Reeve evaluated Martinez on June 25, 1997 and noted that Martinez "[R]eported to me that he had been involved in a motor vehicle accident which had resulted in a whip lash of his neck. The patient, however, at his time does not complain of specific pain. He has no limitations around his shoulder or upper extremities." Tr. 279. Dr. Reeve completed a range of motion form and found no problems with Martinez' shoulders. Tr. 286.

Dr. Harvie examined Martinez on November 10, 1997. At that time, Martinez complained of pain in his right hip, his back, his neck and his right shoulder. Tr. 305. Dr. Harvie did not document any abnormal findings of the shoulders (Tr. 306-307) and opined Martinez had no "reaching" limitations (Tr. 311).

Based on the record as a whole, the Court finds that the Commissioner met her burden at step five of the sequential evaluation process. The ALJ's decision is supported by substantial evidence and he applied correct legal standards. Accordingly, the ALJ's decision is affirmed.

A judgment in accordance with this Memorandum Opinion will be entered.

 

**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**